JAMES W. NASH, APPELLANT, *v.* GEORGE KEMP, RESPONDENT.

*Party-wall — right to cover front of — Conveyance of land held adversely — what is — Estoppel.*

The plaintiff and one Livermore being the owners of adjoining lots on the east side of Fifth avenue, in the city of New York, entered into an agreement for the erection of a party-wall, fourteen inches of which was to be on the Livermore lot, and two inches on that of plaintiff. The wall was subsequently erected in pursuance of the agreement. Plaintiff built a house, the front wall of which was of brick, faced with brown stone. The brick portion of the front wall and the southerly eight inches of the party-wall were securely fastened together, in the customary manner, at their intersection on the avenue, and the brown stone extended in front of it so as to cover the southerly eight inches, or one-half of the party-wall.

*Held,* that he had no right to place the brown stone in front of that portion of the party-wall which rested upon the Livermore lot, and that defendant, as her grantee, could compel him to remove the same.

That the fact that the defendant acquired title to the Livermore lot after the plaintiff's house had been completed, did not affect the question, as the claim to thus cover the party-wall was not made under a title adverse to that of the grantor, which the statute required in order to make the deed from Livermore to the defendant void.

That the defendant was not estopped by the fact that her agent had passed by and observed the building while in process of erection, and had supposed that the plaintiff's front wall extended to the center of the party-wall.

APPEAL from a judgment recovered on trial at Special Term, dismissing the plaintiff's complaint.

This action was brought to prevent the defendant from interfering with the plaintiff's use up to the center line thereof, of the front of a party-wall between their respective houses; the defendant having threatened to cut away and remove from the front of a portion of said party-wall certain stone trimmings and thereby greatly mar and disfigure the plaintiff's house.

*Richard S. Newcomb* and *Albert Cardozo,* for the appellant. The plaintiff was in actual possession of the premises in dispute when the defendant bought. He, therefore, had notice of Mr. Nash's right. To the extent that Nash held possession, the convey-

ance to Kemp was void. (1 Stat. at Large, p. 690, § 147; *Sherry* v. *Frecking*, 4 Duer, 452.) In the absence of any thing showing that the parties meant otherwise by force of the term "party-wall," each obtained equal rights in that wall. Plaintiff will not have equal rights in it if he cannot use half of it on the front. (Washburn on Easements, 564.) It makes no difference that it does not stand equally on each lot. It may be a party-wall, though more on one than the other lot, or if wholly on one lot. (Id., 568; *Brondage* v. *Warner*, 2 Hill, 145; *Rogers* v. *Sinsheimer*, 50 N. Y., 647.) A party and a common wall mean the same. (*Campbell* v. *Mesier*, 4 Johns. Ch., 334; Washburn, 570.)

*Joseph H. Choate*, for the respondent.

DANIELS, J.:

The plaintiff and defendant own adjoining lots on the easterly side of Fifth avenue, in the city of New York. The defendant's lot is thirty feet in width and of the depth of 100 feet. It is bounded on the north by Fiftieth street and a portion of the Buckingham hotel has been erected upon it. He derived his title to it from Sarah A. Livermore after the plaintiff had erected a dwelling upon his lot, which is twenty-five feet in width and of the same depth as the defendant's lot. Before the dwelling was erected, and while the lots were owned by the plaintiff and Sarah A. Livermore respectively, they entered into an agreement for the erection of a party-wall. It was provided then that it should be erected fourteen inches on the lot now owned by the defendant, and two inches on the plaintiff's lot; that it should be at least four stories in hight above the basement, and seventy feet in length along the northerly side of the building to be erected by the plaintiff; and the evidence in the case has established the fact that the wall was built as the agreement specified that it should be. The front wall of the plaintiff's building was faced with brown stone, but the inside portion was built of brick, the same as the division wall, and both were built in together at the corner as brick walls are usually put up. For the purpose of allowing that to be done the party-wall had been extended west toward the avenue to a point ten inches easterly therefrom. From that point the southerly eight

inches of the wall was prolonged six inches further toward the avenue, and the brick portion of the front wall of the plaintiff's dwelling was built at the corner by being toothed and blocked into that. It was also further secured to the party-wall by two diagonal anchors in each stay embedded in each wall to the extent of half their thickness. The northerly half of the party-wall, at its westerly end, was left at the distance of ten inches from the avenue, and the space of four inches southerly therefrom between the face of the front brick wall, and the line of the avenue was wholly used for putting up the brown-stone front of the plaintiff's dwelling. The ashlar, or brown-stone facing, was anchored, as it was put up, to the brick wall behind it, and it was extended northerly to the center of the party-wall. By erecting it in that manner this brown-stone facing was made to stand upon and occupy so much of the adjoining lot upon the north as intervened between the front of the brick wall and the line of the avenue and the northerly line of the plaintiff's lot and the center line of the party-wall, which formed a space of six inches fronting upon the avenue by four in depth.

When the defendant erected the building placed upon his lot he proposed to use that space for the extension of its front to his own southerly line, and for that purpose to remove so much of the brown-stone portion of the plaintiff's front wall as was necessary to enable him to do that. To prevent that from being done this action was commenced, and an injunction was issued prohibiting and restraining the execution of that design. It appeared upon the trial that so much of the front wall built by the plaintiff could be removed and replaced as the defendant intended to build it, without impairing the strength or durability of his building, or seriously interfering with its appearance.

The learned judge presiding at the trial held that the plaintiff had no right to occupy the space in controversy by the northerly portion of the brown-stone facing of the front wall of his dwelling, and for that reason directed a dismissal of the complaint.

His opinion stating the reasons which had induced that conclusion, has been reported and will be found in *Nash* v. *Kemp* (49 Howard, 522).

It has been insisted in the case that the deed executed and delivered by Sarah A. Livermore to the defendant, conveyed no

title to the space in controversy, because it was at that time in the possession of the plaintiff as an adverse claimant. But it is plain that the claim was not made under a title, and for that reason it could not be attended with such a result. To render the deed void the statute required that there should be not only possession by some other person than the grantor, but in addition to that the further fact that it should also be under a title adverse to that of the grantor (3 R. S. [5th ed.], 30, § 167), and full effect has been in that manner secured to its language in this respect by the decisions which have been made upon the consideration of the provision. (*Crary* v. *Goodman*, 22 N. Y., 170; *Hallas* v. *Bell*, 53 Barb., 247; *Christie* v. *Gage*, 2 N. Y. S. C. [T. & C.], 344; *Stevens* v. *Hauser*, 39 N. Y., 302.) In this case there was no such adverse title as the statute has provided shall avoid the deed of the grantor. And there could not be such a title very well under the terms of the agreement made for the erection of the party-wall. For it was provided by the instrument, made for that purpose, "that no part of the land upon which said wall, or any extension thereof shall be constructed, shall pass to or be vested in either of the parties hereto by virtue of this agreement." The plaintiff claimed no other right than those secured to him by that agreement, and if he derived none from that source then he occupied the land in controversy without any adverse title to it whatsoever.

The wall which, by the agreement made was to be built, was the northerly wall of the building the plaintiff was about to erect. It contained no provision whatever concerning the front wall of such building, and consequently it in no way regulated or governed its mode of construction farther than that it must be necessarily united with the party-wall to complete its erection. That could be rendered available in the erection of the building only by properly connecting it with and building it into the front wall, and it was fashioned and terminated at its westerly end so as to be adapted to that object. In that respect it was constructed as the evidence proved such walls to be ordinarily erected in the city of New York. The object was to secure a firm and durable connection with the front wall, and that was shown to have been wholly accomplished by the manner in which the brick portion of the front wall was built into and secured to the end of the party-wall, and concerning which no com-

plaint has been made by the defendant. To that extent it was to be inferred, from the agreement made, that the plaintiff was at liberty to go. For it was only in that way that he could obtain the right intended to be secured to him by the party-wall. (*Rogers v. Sinsheimer*, 50 N. Y., 646.) But the necessity which would justify him in making that use of the extremity of the party-wall could not reasonably be extended any farther, and the manner in which the plaintiff constructed it showed such to have been his own understanding of his right; for he did not project the party wall to the line of the avenue, but terminated it so far eastwardly from that line as to enable him to build and properly connect his front brick wall with it and still have space enough between it and that line for the stone facing placed upon the front of the lot. That facing was no part of the party-wall. It was neither so in theory nor according to the manner in which the party-wall had been placed upon the premises. It was rather the ornamental facing of the front wall as it had already been built and united to the other. And for that reason the agreement secured the plaintiff no authority to place it upon the defendant's property. That was wholly restricted to the northerly wall of the building to be erected by the plaintiff, and it was simply to be "a party-wall between the said building so to be erected by the said party of the first part, and any building which may hereafter be erected by the said party of the second part upon the land owned by her." That, with the right to use the wall as it should be required in the erection of his building, was all that the agreement secured him, and he enjoyed that as the work was afterward performed by erecting and uniting the front brick wall with the party-wall, without occupying any part of the space now in dispute. He put no part either of the party-wall or of the front brick wall to which the stone facing was secured upon that piece of ground, and he had no right to use it with that facing for the reason that it was not in any way required for its security, or that of the front brick wall which had been properly built into and connected with the front end of the party-wall without it. This piece of ground was the property of the defendant, and it had been subjected to no easement by the agreement, and was required for none in order to give the plaintiff's building the full benefit of the party-wall. For that reason, having this title to

the land, the defendant could properly and lawfully use it in the erection and completion of his own building, as he proposed to do when he was restrained and enjoined by the order of the court.

The right of enjoyment by possession followed from the fact that he was the legal owner as long as neither the agreement he had made nor the proper uses of the wall itself, nor any other reasonable necessity existed for its occupancy by the plaintiff for the erection or security of the stone facing placed upon the front of his dwelling.

The authorities cited and relied upon do not sustain the position taken on the plaintiff's behalf. But they justify the conclusion upon which the judgment has been recovered; and that, in substance, was, as the land in controversy was not required for or used by the party-wall, nor for securely uniting the front of the wall of the plaintiff's building with it, that he could not occupy it merely for the purpose of extending the brown-stone facing over it when that was in no way needed to complete or securely maintain it. (Washburne on Easements, etc., [3d ed.], 564; *Fettretch* v. *Leamy*, 9 Bosw., 510; *Partridge* v. *Gilbert*, 15 N. Y., 601; *Rogers* v. *Sinsheimer, supra; Ogden* v. *Jones*, 2 Bosw., 685; *Duncan* v. *Haubert*, 2 Brewster, Pa., 362.)

It has also been claimed that the grantor of the defendant had so far acquiesced in the extension of the plaintiff's front wall, as to estop him from controverting the legal validity of the act. But the evidence upon that subject was too slight to be attended with such an important result. At the most it merely showed that her brother having the supervision of her property for her, had, in passing by, observed the building while it was in the progress of erection, and supposed the front wall was extended to the center of the party-wall. But he did nothing by way of inducing or approving of such an extension of the brown-stone facing. That was altogether insufficient to create an estoppel, even if his mere omission to object could have prejudiced the rights of the grantor. He asserted nothing and did nothing justifying the plaintiff in believing that he intended, on the part of the owner, to sanction the appropriation which was made of this piece of land. And even if he had, it is not probable that he could, in that way, have deprived her of any portion of her real estate. (*Babcock* v. *Utter*, 1 Keyes, 115, 397;

*Corning* v. *Troy Iron and Nail Factory*, 40 N. Y., 192; *Selden* v. *Del. and Hud. Canal Co.*, 29 id., 634, 639.)

Objections were taken to evidence received during the trial showing the manner in which party-walls had usually been built in the city of New York; and they have been relied upon in support of the appeal. But as the rights of the parties have been considered upon the basis of the agreement entered into, and the practical effect given to it by the acts of the plaintiff, no examination of them can be required to determine the proper disposition which should be made of this case. For the reasons already assigned, and others given in the opinion delivered at Special Term, the judgment should be affirmed, with costs.

BRADY, J.:

Although there are reasons why, perhaps, a dissenting view might be expressed, yet, upon a careful and reflective examination of the question involved, I think the conclusions of brother DANIELS should be adopted. I concur, therefore.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment affirmed, with costs.